**[J-64-2025] [MO:Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 50 EAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered on |
| | : | September 7, 2023, at No. 538 |
| v. | : | EDA 2022, affirming the Order of |
| | : | the Court of Common Pleas of |
| | : | Philadelphia County, Criminal |
| PHILLIP SHIVERS, | : | Division, entered on January 27, |
| | : | 2022, at No. CP-51-CR-0005546- |
| Appellant | : | 2019. |
| | : | |
| | : | ARGUED:  September 10, 2025 |

## CONCURRING OPINION

**JUSTICE WECHT**                                        **DECIDED: July 21, 2026**

Since Pennsylvania's Constitution issued in 1776, it has opened with a Declaration of Rights "inherent" in "all men."[1]  Some of these rights find no cognate in the United States Constitution adopted some twelve years later.  For example, unlike its federal counterpart, Pennsylvania's Constitution now recognizes the people's rights to reputation,[2] to clean air and pure water,[3] to free and equal elections,[4] to a "thorough and efficient system of public education,"[5] and to "abolish their government in such manner

---

[1]     *See* PA. CONST. (1776) art. I; PA. CONST. (1968) art. I, § 1.

[2]     *Id.*

[3]     *Id.* at § 27.

[4]     *Id. at* § 5

[5]     *Id.*, art. III, § 14.

as they may think proper."[6]  Other Pennsylvania rights bear similarities to federal provisions.  For example, both the federal Bill of Rights[7] and Pennsylvania's Declaration of Rights guarantee, in various phrasings, the rights to free speech,[8] free exercise of religion,[9] and freedom from unreasonable searches and seizures.[10]

These areas of overlap do nothing to subordinate Pennsylvania rights to their federal analogues.  Each right guaranteed in Pennsylvania's Declaration of Rights exists separately and independently of the federal Bill of Rights.  What this means is that a claim under the former should be capable of preservation without reference to the latter.  Oddly, that is not how Pennsylvania case law has developed.  Instead, when federal and Pennsylvania constitutional rights correspond, the federal provision reigns by default:  a litigant may obtain the protection of the Pennsylvania right only if he can demonstrate—by navigating an unnecessarily complex set of preservation requirements imposed by this Court's decisions—that the state right is more generous than the federal.  Otherwise, courts have been instructed to assume that the Pennsylvania right extends no further than the federal guarantee.

In the case at hand, the Majority applies waiver pursuant to *Commonwealth v. Bishop*,[11] this Court's most recent addition to the preservation scheme.  Bound to our case law as it currently exists, I am bound as well to concur in today's disposition.  As I explained in my lone dissent at the time of *Bishop*'s issuance, that decision was

---

[6]     *Id.*, art. I, § 2.

[7]     U.S. CONST. amends. I-X.

[8]     U.S. CONST. amend. I; PA. CONST. art 1, § 7.

[9]     U.S. CONST. amend. I; PA. CONST. art 1, §§ 3, 4.

[10]    U.S. CONST. amend. IV; PA. CONST. art 1, § 8.

[11]    217 A.3d 833 (Pa. 2019).

erroneous.[12]  It still is.  For some time now, this Court has been heading in the wrong direction with regard to the preservation and advancement of Pennsylvania constitutional rights.  It is time to rethink the barriers that this Court has erected, barriers that thwart invocation of those rights.

Pennsylvania's Constitution "served as the foundation—the template—for the federal charter," not the other way around.[13]  "Our autonomous state Constitution, rather than a 'reaction' to federal constitutional jurisprudence, stands as a self-contained and self-governing body of constitutional law, and acts as a wholly independent protector of the rights of the citizens of our Commonwealth."[14]  "[I]n its protection of essential rights, our founding document is the ancestor, not the offspring, of the federal Constitution."[15]

The origin and independence of the Pennsylvania Constitution took center stage in our 1991 landmark decision in *Commonwealth v. Edmunds*.[16]  Recognizing the "strong resurgence of independent state constitutional analysis," we underscored that "it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution, each time a provision of that fundamental document is implicated."[17]  We emphasized that, when interpreting Pennsylvania's Constitution, we are "not bound by

---

[12]     *Id.* at 844-51 (Wecht, J., dissenting).

[13]     *League of Women Voters v. Commonwealth*, 178 A.3d 737, 802 (Pa. 2018)*; see also* KEN GORMLEY, THE PENNSYLVANIA CONSTITUTION: A TREATISE ON RIGHTS AND LIBERTIES 2 (2004) ("Many lawyers and judges are unaware that the Pennsylvania Constitution, drafted in the midst of Revolution in 1776, is twelve years older than the federal Constitution.").

[14]     *League of Women Voters*, 178 A.3d at 802.

[15]     *Id.* at 741; see also *Pap's A.M. v. City of Erie*, 812 A.2d 591, 605 (Pa. 2002) (Pennsylvania Constitution is the "ancestor, not a stepchild" of the federal Constitution).

[16]     586 A.2d 887 (Pa. 1991).

[17]     *Id.* at 894-95.

decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions."[18]  The U.S. Supreme Court has the final word on the meaning of the federal Constitution, but those rulings do not determine the meaning of state constitutional provisions.  While the U.S. Supreme Court defines the minimum protections guaranteed by the federal Constitution, *Edmunds* recognized that states "are not only free to, but also encouraged to engage in independent analysis in drawing meaning from their own state constitutions."[19]  A state "has the power to provide broader standards, and go beyond the minimum floor which is established by the federal Constitution."[20]

*Edmunds* appeared to promise a new jurisprudential focus upon discrete examination of the rights guaranteed under the Pennsylvania Constitution, separate and apart from those provided by the federal Constitution.  But that promise has remained unfulfilled.  When provisions in the two Constitutions bear similarities, Pennsylvania courts continue in the main to treat our Constitution as an afterthought or as subservient to the federal Constitution.

Instead of recognizing a state right's autonomous existence by virtue of its appearance in Pennsylvania's Constitution, such that it can be invoked without reference

---

[18]    *Id.* at 894 (citing *Commonwealth v. Sell*, 470 A.2d 457 (Pa. 1983); *Commonwealth v. Melilli*, 555 A.2d 1254 (Pa. 1989); *Commonwealth v. Bussey*, 404 A.2d 1309 (Pa. 1979); *Commonwealth v. DeJohn*, 403 A.2d 1283 (Pa. 1979); *Commonwealth v. Triplett*, 341 A.2d 62 (Pa. 1975); *Commonwealth v. Richman*, 320 A.2d 351 (Pa. 1974); *Commonwealth v. Campana*, 304 A.2d 432, *vacated*, 414 U.S. 808, *on remand*, 314 A.2d 854, *cert. denied*, 417 U.S. 969 (1974)).

[19]    *Id.* at 894 (citation omitted).

[20]    *Id.* (citing *Sell*, 470 A.2d at 467).  The *Edmunds* Court noted New Jersey Supreme Court Justice Stewart Pollock's observation that, "The first ten amendments (to the U.S. Constitution) establish a foundation for the protection of human liberty.  A state may not undermine that foundation, but its constitution may build additional protections above the federal floor."  *Id.* at n.5 (quoting Stewart G. Pollock, *Adequate and Independent State Grounds as a Means of Balancing the Relationship Between State and Federal Courts*, 63 TEX.L.REV. 977, 980 (1985)).

to the federal Constitution, Pennsylvania courts instead are instructed first to ascertain whether the state provision is "coterminous" with the corresponding federal provision (if a correspondence exists).[21] In other words, we have forced ourselves to discern the value of a state right by examining its similarity to a corresponding federal right. When those rights are sufficiently similar, the state right is said to be "coterminous" with the federal right. This heuristic tends naturally to strip the state right of its independence, history, and character. The Pennsylvania right is relegated to the back seat of the federal constitutional vehicle. Its meaning then tumbles by default toward whatever the U.S. Supreme Court says the federal right means.[22] This is so notwithstanding the fact that our Constitution serves a much smaller (and hence different) population than the national one, creates a state government with police powers to protect inherent natural rights rather than restraining a federal government, and predates the U.S. charter by some dozen years. So much for the independence of which the *Edmunds* Court spoke.

This gets things backwards. *Edmunds* held that it is "important and necessary" to conduct an "independent analysis of the Pennsylvania Constitution, each time a provision

---

[21] *See, e.g., Sadler v. Workers' Comp. Apps. Bd.*, 244 A.3d 1208, 1215-16 (Pa. 2021) (deeming the equal protection rights under the Pennsylvania and United States Constitutions to be coterminous); *Commonwealth v. Bryant*, 855 A.2d 726, 735 (Pa. 2004) (ruling that the test for ineffective assistance of counsel under the Pennsylvania Constitution was equivalent to that under the federal Constitution); *Commonwealth v. Arroyo*, 723 A.2d 162, 170 (Pa. 1999) (holding that the right to counsel guaranteed by the Pennsylvania Constitution is coterminous with the right to counsel afforded by the Sixth Amendment to the United States Constitution).

[22] Tethering state constitutional rights to the United States Supreme Court's understanding of federal rights risks depriving Pennsylvanians of those same rights. The U.S. Supreme Court may reverse course, or its Justices may be at odds over the meaning of a particular right, or it might not speak clearly about the nature and applicability of a right. "Pennsylvania citizens should not have the contours of their fundamental rights under our charter rendered uncertain, unknowable, or changeable, while the U.S. Supreme Court struggles to articulate a standard to govern a similar federal question." *Pap's A.M.*, 812 A.2d at 611.

of that fundamental document is implicated."[23]  We should be operating from the understanding that our Constitution guarantees a right separate from and untethered to any similar component of the federal Constitution, one that has its own history, meaning, and purpose.  It should be axiomatic that a state constitutional right does not hold meaning only if and when some federal right does.  Yet, we persist in a contrary analytical frame.  We begin with an assumption (and confirmation bias) that a state right is the identical twin of its corresponding federal right.  We then place the burden of proving the independence of the state right upon the person seeking its protection.  *Bishop* put it thus: "our present jurisprudence . . . treats parallel federal and state constitutional provisions as coterminous where the appellant *has done nothing to distinguish between them.*"[24]  This paradigm tends to impoverish state constitutional development.

Once a state right is chained to a federal right, a person seeking to unshackle them faces an uphill journey rife with potential traps, each of which was created by this Court.  That journey begins with *Edmunds* and proceeds through this Court's interpretive missteps in *Bishop*.  *Edmunds* "set forth certain factors to be briefed and analyzed by litigants in each case hereafter implicating a provision of the Pennsylvania Constitution."[25]  These factors were not imposed as a barrier to defeat preservation of state constitutional claims.  They were offered to assist this Court in availing itself of the federalist principle of *Michigan v. Long,*[26] in which the United States Supreme Court reminded state courts of the utility of a "plain statement" of the "adequate and independent" state grounds upon

---

[23]     *Edmunds*, 586 A.2d at 894-95.

[24]     *Bishop*, 217 A.3d at 841 (emphasis added).

[25]     *Edmunds*, 586 A.2d at 895.

[26]     463 U.S. 1032 (1983).

which a state decision rests.[27]  Thus, the *Edmunds* Court opined that, "as a general rule it is important that litigants brief and analyze" four factors:  (1) the text of the state constitutional provision; (2) the history of that provision along with any relevant case law; (3) case law from other states with similar constitutional provisions; and (4) policy considerations, including issues particular to state and local concerns.[28]  *Edmunds* acknowledged that "federal precedent may be useful," but stressed that "it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution."[29]

What began as a "general rule" encouraging appellate "litigants [to] brief and analyze" the four factors,[30] has become something else entirely.  *Edmunds*' initial purposes have been eclipsed, and a very different concern has emerged as this Court's priority:  issue preservation.[31]  In order to invoke the protections of a state constitutional right that happens to have a federal counterpart—to pursue what is tellingly known as a "departure claim"[32]—a litigant must marshal the particulars of this Court's case law and lay the foundation for such a "departure claim" before the trial court, addressing the four *Edmunds* factors.  *Bishop*'s formalization of threshold preservation requirements made

---

[27]     *Edmunds*, 586 A.2d at 895 (summarizing the requirement set forth in *Michigan v. Long*).

[28]     *Id.* at 895.

[29]     *Id.*

[30]     *See Pap's A.M.*, 812 A.2d at 603 (finding it "helpful" to evaluate a provision in the Pennsylvania Constitution using the "model suggested by *Edmunds*" and noting that a court "should" consider the four *Edmunds* factors when interpreting a state constitutional provision).

[31]     *See Bishop*, 217 A.3d at 840 ("the precedent of this Court requires . . . some analysis explaining the grounds for departure").

[32]     *See generally id.* at 841-42.

things worse.  What began auspiciously as a revival of state constitutional independence has deteriorated into a byzantine waiver trap.  Now, thirty-five years on, a failure to set forth at least "some analysis" of the *Edmunds* factors at every level of review will result in waiver of the entire "departure claim."[33]

*Bishop* failed to clarify how much development of each *Edmunds* factor is necessary in order to preserve a so-called departure claim at the trial court level. Reaching for a framework created by the New Mexico Supreme Court,[34] *Bishop* adopted a preservation system in which, absent controlling precedent::

> a party also must assert *in the trial court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision.  This will enable the trial court to tailor proceedings and to effectuate an appropriate ruling on the issue.[35]

*Bishop* blessed the New Mexico Supreme Court's "specific[] reiterat[ion]" that "[r]eferences to the state constitution, without some discussion or argument concerning the scope of its protections, are not enough to alert the trial court to the issue of a possible difference between the rights afforded by the state constitution and those provided by the [federal charter.]"[36]  *Bishop*'s takeaway from this New Mexico rule was that, "[a]t a minimum, . . . the defendant must offer some reasonably developed, colorable analysis that would support departure."[37]  Confusingly, a litigant does not have to provide a

---

[33]     *Id.* at 840-41.

[34]     *Id.* at 840 (citing *State v. Gomez*, 932 P.2d 1, 8-9 (N.M. 1997)).

[35]     *Id.* (quoting *Gomez*, 932 P.2d at 8) (emphasis in original).

[36]     *Id.* (quoting *Gomez*, 932 P.2d at 10) (footnote omitted).

[37]     *Id.* at 841 n.7.

"complete analysis," only "*some* analysis."[38]   To make matters worse, in determining whether a party has "meaningfully" or "adequately" developed a state constitutional claim, this Court eschews objective review; instead, we are simply reassured that "judging quintessentially requires the application of considered judgment."[39]  At the time, I saw this standardless standard as "muddle and confusion."[40]  Nothing in the intervening years has improved my view of *Bishop*.

Today's Majority faithfully applies *Bishop*'s ostensible "standard" to the case *sub judice*.  The question at the heart of this appeal is whether Article I, Section 8 of the Pennsylvania Constitution provides greater protection than the Fourth Amendment in circumstances where unprovoked flight from police officers occurs in a "high-crime area."[41]   Because there is no controlling precedent supporting a departure claim, Appellant Shivers was required to:  (1) assert that Article I, Section 8 should be interpreted more expansively than the Fourth Amendment; (2) provide reasons for interpreting the state provision differently; and (3) offer "some reasonably developed, colorable analysis."[42]  Shivers did none of these things.  *Bishop* was on the books at the time that Shivers filed his suppression motion.  *Bishop*, therefore, requires this Court to find Shivers' departure claim to be waived.

---

[38]     *Id.* at 841 n.9 (emphasis in original).

[39]     *Id.* at 844.  Concurring in *Commonwealth v. Armolt*, 294 A.3d 364 (Pa. 2023), I explained that the "considered judgment" standard is not a "clear, workable standard" for determining whether a claim is waived.  *Id.* at 389 (Wecht, J., concurring).  "How can a party anticipate what does, or does not, satisfy our amorphous, undefinable 'considered judgment?'"  *Id.*  My question remains unanswered.

[40]     *Bishop*, 217 A.3d at 850 (Wecht, J., dissenting).

[41]     In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the United States Supreme Court held that such unprovoked flight in a high-crime area was sufficient to establish reasonable suspicion for purposes of an investigatory detention.  *Id.* at 124-25.

[42]     *Bishop*, 217 A.3d at 841 n.7.

The problem is not the Majority's application of *Bishop*. The problem is *Bishop*. As I predicted in my dissent at the time, this Court's "new issue-preservation regime" would, "in practice," result in "Pennsylvania courts . . . declin[ing] to enforce independent Pennsylvania constitutional rights (many of which pre-date their federal counterparts) unless the defendant offers the trial court 'some analysis' . . . distinguishing the state constitutional provision from a related federal one."[43] While this Court advertised *Bishop*'s new paradigm as a mere refinement of our existing jurisprudence, its confusing obstacle course of standards "finds no support whatsoever in Pennsylvania law."[44] Nothing in the text, history, or purpose of the Pennsylvania Constitution compels *Bishop*'s "departure claim" jurisprudence.

As I explained at the time, the amorphous "some analysis" rule would, at best, muddy rather than clarify existing preservation rules. It would "inject even more arbitrariness and uncertainty into this Court's already erratic waiver jurisprudence."[45] This was particularly likely given that the "rules" crafted in *Bishop* were "a paragon of judicial doublespeak:"[46]

> The Majority tells us, for instance, that an appellant need not engage in a "*complete* analysis" of his state constitutional claim, but that he must engage in "*some* analysis" and "provide reasons for interpreting the state provision differently from the federal provision." Similarly abstruse is the Majority's suggestion that it would never apply a new rule "to the detriment of a litigant who has had no previous notice of it," only to do exactly that a mere five pages later. In short, the Majority's implementation of the *Gomez* framework adds even more uncertainty for litigants wondering what exactly

---

[43]     *Id.* at 847 (Wecht, J., dissenting) (quoting *id.* at 840-42, 842 n.9).

[44]     *Id.* (Wecht, J., dissenting).

[45]     *Id.* at 848 (Wecht, J., dissenting).

[46]     *Id.* at 849 (Wecht, J., dissenting).

they must do or say to preserve a claim under the Pennsylvania Constitution to this Court's satisfaction. I suppose the takeaway here is: "It depends."[47]

*Bishop*'s "some analysis" rubric, "whether by design or by accident—makes an *Edmunds* analysis a *de facto* prerequisite for preserving departure claims."[48] This should be seen as a sea change in our law; previously, this Court had made clear that the "failure to engage in an *Edmunds* analysis [did] not result in waiver of a state constitutional claim."[49] The paradigm shift was unacknowledged; the *Bishop* majority treated its holding merely as part and parcel of our existing waiver jurisprudence.

*Bishop*'s "message to the criminal defense bar [was] clear in its lack of clarity: Do what we have said you need not do or else we, in our 'considered judgment,' might find your analysis too 'scant' or too 'truncated' to warrant our attention."[50] The *Bishop* rule (if it can be called that) "has no basis in Pennsylvania law, . . . adds nothing of value to our issue preservation jurisprudence, and is sure to be applied (or not applied) in an arbitrary and ad-hoc fashion."[51]

*Bishop* injected confusion into Pennsylvania law. No clarity has emerged in the years since. That today's Majority appears to have applied *Bishop* correctly does not make *Bishop*'s edicts any more comprehensible or workable. Left to my own devices, I would overrule *Bishop* and restore the independence to state constitutional claims that the *Edmunds* Court envisioned. Litigants should not have to tiptoe through a preservation minefield in order to invoke the separate and independent protections of our Constitution.

---

[47] *Id.* (Wecht, J., dissenting) (citations omitted) (emphasis in original).

[48] *Id.* (Wecht, J., dissenting).

[49] *Arroyo*, 723 A.2d at 166 n.6; *see also Pap's A.M*, 812 A.2d at 603.

[50] *Bishop*, 217 A.3d at 850 (Wecht, J., dissenting) (quoting *id.* at 840-42, 842 n.9, 843-44, 844).

[51] *Id.* at 851 (Wecht, J., dissenting).

That endeavor will have to await a different case and a different day. We are not being asked to overrule *Bishop* or any other cases interpreting *Edmunds*. That being the case, and as I am bound to apply the law as it currently stands, I concur in today's result.